IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROSEBUD LMS, INC., d/b/a ROSEBUD PLM, | § § § | |
| Plaintiff, | § § | C.A. No. _____ |
| v. | § § | |
| ADOBE SYSTEMS INCORPORATED, | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § | |

**COMPLAINT FOR PATENT INFRINGEMENT, VIOLATION OF SOFTWARE LICENSE AGREEEMENT, CONVERSION, UNJUST ENRICHMENT, FRAUDULENT MISREPRESENTATION AND, ALTERNATIVELY, CORRECTION OF INVENTORSHIP**

1. This action is for patent infringement, conversion, unjust enrichment, fraudulent misrepresentation, violations of a software license agreement and, alternatively, correction of inventorship, in which Rosebud LMS, Inc. d/b/a Rosebud PLM ("Rosebud" or "Plaintiff") makes the following allegations against Adobe Systems Incorporated ("Adobe" or "Defendant").

**PARTIES**

2. Plaintiff Rosebud is a Delaware corporation with its principal place of business at 155 East 77th Street 1A, New York, New York 10021.

3. On information and belief, Defendant Adobe is a Delaware corporation with its principal place of business at 345 Park Avenue, San Jose, California 95110.

**JURISDICTION AND VENUE**

4. This action arises, in part, under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b). On information and belief, Defendant resides in this district, has transacted

business in this district and committed and/or induced acts of patent infringement in this district.

## SUMMARY OF COUNTS AGAINST ADOBE

6. Rosebud has filed this action because Adobe misappropriated and converted Rosebud's proprietary technology relating to user collaboration over a network of computers. More specifically, Adobe obtained Rosebud's proprietary technical information under false pretenses, that is, under the guise of pursuing a potential collaboration with Rosebud. Based on the proprietary technology that it misappropriated from Rosebud, Adobe has now "developed its own" collaboration tool, called Collaborate Live. Among other products, Adobe now makes and sells Adobe Acrobat 9.0 and Adobe Acrobat X, which include Collaborate Live and which infringe Rosebud's patent, United States Patent No. 8,046,699 ("the '699 patent") (Ex. A hereto). Consequently, Adobe is liable to Rosebud for patent infringement, conversion and theft of ideas, unjust enrichment, restitution and fraudulent misrepresentation.

7. Adobe is also liable to Rosebud for the breach of Rosebud's End User License Agreement by Adobe, its executives and employees. As of June 28, 2009, several Adobe employees or consultants signed up under the License Agreement by downloading the Rosebud software from Rosebud's website. At least the following Adobe employees acknowledged and signed the Rosebud License Agreement on behalf of Adobe: Tom Dent, Mike Potter, Mike Fitzpatrick, Brittany Rave, and Noha Edell. Adobe consultant Leonard Rosenthal (believed later to have become an Adobe employee) also acknowledged and signed the Rosebud License Agreement on behalf of Adobe. These individuals all participated in on-line presentations given by Rosebud, which requires downloading of the Rosebud software, which in turn requires expressly agreeing to the terms of the License Agreement. On information and belief, Adobe and one or more of these registrants, without Rosebud's authority,

breached the terms of Rosebud's License Agreement by copying, modifying, reverse engineering, decompiling or disassembling Rosebud's subject Software provided under the terms and conditions of the License Agreement.

8. In addition to converting Rosebud's invention for its own use in the marketplace, Adobe committed a further act of conversion by filing its own patent application (Serial No. 10/858,857) on Rosebud's technology, over two years after Adobe knew that Rosebud had filed its own patent application (Serial No. 10/127,777, to which the application issuing as the '699 Patent claims priority as a continuation). U.S. Patent No. 7,603,357 ("the '357 Patent") issued from Adobe's application on October 13, 2009. Rosebud believes that a change in inventorship of the '357 Patent pursuant to 35 U.S.C. § 256 is warranted for at least the reasons that (i) Adobe fraudulently included its own employees as inventors rather than the true Rosebud inventors, (ii) in filing the application, Adobe misappropriated Rosebud's invention as its own, and (iii) Adobe concealed what it knew about Rosebud's technology from the Patent Examiner during prosecution. However, if Adobe is found not to have committed fraud, then, in the alternative, Rosebud seeks a change in inventorship of the '357 Patent pursuant to 35 U.S.C. § 256.

**FACTUAL BACKGROUND**

9. On April 22, 2002, Rosebud filed U.S. Patent Application No. 10/127,777 ("the '777 application") to protect its computer collaboration invention. That application issued as U.S. Patent No. 7,454,760 on November 18, 2008 (the "'760 patent"). On August 29, 2008, Rosebud filed U.S. Patent Application No. 12,201,355 ("the '355 application"), which is a continuation of the '777 application. This application issued as the '699 patent on October 25, 2011.

10. One embodiment of Rosebud's invention is a many-to-many architecture that allows all participants, or users, to use the same or substantially similar client application (e.g. Adobe Acrobat/Reader). The architecture replicates the menu commands at any one user's workstation to all other user's workstations. Using Rosebud's technology, all users have their own, undistorted, copy of a file that is the subject of collaboration. Rosebud currently offers a downloadable trial version of its technology from its website, which has received excellent trade reviews.

11. In April of 2002, Rosebud's Chief Executive Officer ("CEO") John Mohan met Adobe's then-Manager of Advanced Technology Group Tom Malloy ("Malloy"), who is currently Adobe's Senior Vice President and Chief Software Architect. Mr. Mohan was invited to give a live demonstration of Rosebud's technology at Adobe's corporate offices in San Jose, California.

12. On April 23, 2002, the day after Rosebud filed the '777 application, Mr. Mohan provided the requested demonstration to several Adobe executives and employees, including Malloy and two of his associates, Bruce Hunt and Jim Donohue, along with Fred Mitchell ("Mitchell") and his associate, John Lechrone. During the demonstration, Mr. Mohan emphasized that the technology was proprietary to Rosebud and that Rosebud had filed a patent application on it the previous day. During the meeting, Adobe, in general, and Malloy, in particular, seemed interested in the Rosebud technology and Malloy enthusiastically committed to following up in a few days. Malloy called Mr. Mohan a few days later and said that Adobe was not interested in Rosebud's technology.

13. On July 7, 2003, Bruce Chizen, then-CEO of Adobe ("Chizen") gave an interview to the *New York Times*, during which the interviewer pointed out that, although Adobe Reader has been run on over 500 million computers, "yet it does not make a cent for Adobe."

4

On October 3, 2003, after reading an article about the interview, Rosebud CEO Mr. Mohan sent an email to Chizen proposing how Reader could be a revenue generator when used on the Internet for document collaboration with Rosebud's patent-pending technology. Mr. Mohan stated in the email that Rosebud's collaborative technology could generate a "significant revenue stream for Adobe Reader and Rosebud by using both products to facilitate web-collaboration in Adobe Acrobat and Adobe Reader." On information and belief, at that time Adobe did not have any products that would generate a revenue source from the internet and did not have any plans to develop any products for doing so.

14. On October 4, 2003, Chizen responded in an email stating: "Sounds like what you have done is very interesting." In the same email, Chizen also directed Mitchell, an Adobe executive and a member of Chizen's staff, and Adobe employee Shantanu Narayen to "follow up" with Rosebud on a potential business arrangement between Rosebud and Adobe.

15. On October 18, 2003, Mohan sent Chizen a follow-up email emphasizing how much revenue Rosebud's technology could generate. In the email, Mohan stated:

> The potential Rosebud revenue could be very significant. If we targeted 1/2 of 1 percent of the current Reader installed base of 500 million users for 15 minutes usage per month at 25 cent per minute the annual revenue would be $112 Million. For comparison, WebEx charges 45 cents and Placeware charges 35 cents. And for an "in the ballpark" check WebEx anticipates revenue in the range of $225 to $250 Million for FY '04.

16. On October 24, 2003, Adobe executive Dave Stubenvoll, head of Adobe's mergers and acquisitions group ("Stubenvoll"), called Rosebud's CEO to discuss Rosebud's technology. Stubenvoll seemed impressed with Rosebud's technology and stated that Adobe wanted to get involved with Rosebud.

17.  On December 18, 2003, Rosebud's CEO met with Stubenvoll and gave a presentation and demonstration of Rosebud's technology.  Mohan's intent was to try to recruit Adobe as an investor in Rosebud's technology, either by Adobe entering into a license or acquiring Rosebud.  Stubenvoll began the meeting on a negative note suggesting that Rosebud should be using a different file format for collaboration.  Stubenvoll made one negative comment after another causing Rosebud's CEO to wonder why Sutbenvoll had agreed to the meeting.  The meeting ended in about a half hour with Stubenvoll telling Mr. Mohan to get back to him when Rosebud had sold three server versions of the software.  Stubenvoll stated at that time that Adobe was not interested Rosebud's technology.

18.  On June 1, 2004, unbeknownst to Rosebud, Adobe filed U.S. Patent Application No. 10/858,857 ("the '857 application") entitled "Collaborative Asset Management," based upon Rosebud's collaboration technology. Adobe also filed a request that the application not be published.  Adobe listed no Rosebud inventors on the '857 application and did not inform Rosebud that it was filing the application.  Prosecution proceeded for over five years until U.S. Patent No. 7,603,357 ("the '357 Patent") issued on October 13, 2009.  During the entire five years of prosecution, Adobe concealed from the Patent Examiner all of the various disclosures and demonstrations that Rosebud had made, and was making, to Adobe, its executives and employees.

19.  In the Fall of 2004, Rosebud was asked by Adobe to participate in the beta pre-release program for Adobe Acrobat 7.  As part of this beta program, Rosebud also implemented a collaboration plug-in for Adobe Reader 7, which was the same plug-in version proposed to Chizen in the October 2003 email and demonstrated to Stubenvoll at the December 2003 meeting.  However, Reader 7 was only partially successful in its ability to utilize the Rosebud plug-in, in that Reader 7 could receive annotations from a user but could not display

them correctly.  Rosebud reported this deficiency to the Acrobat 7 beta program as a "bug," which was acknowledged by Adobe employee Steve Cordero.   Adobe did not state that Rosebud was attempting to do something that Reader 7 was not intended to support.   On January 5, 2005, Adobe released Acrobat 7.

20. During the Acrobat 7 beta program, Mr. Mohan made numerous attempts to determine when the "bug" would be repaired.  On July 29, 2005, after 7 months, Mohan received an email from Adobe employee Lori DeFurio stating that the repair of the "bug" would be postponed to a "future release."  On information and belief, Adobe did not repair the deficiency until the generation of Acrobat 9, which contained Collaboration Live functionality.  If the deficiency had been repaired for version 7, Rosebud would have had a collaboration product that was enabled for Reader two full Acrobat versions, approximately 3 years, earlier than Adobe could offer a similar capability.

21. On April 19-20, 2005, Mr. Mohan attended an annual AGI/Adobe Acrobat & PDF Conference in Orlando, Florida to promote and demonstrate the latest versions of Rosebud's technology to Acrobat experts and Adobe employees.  Mr. Mohan provided a demonstration of Rosebud's technology to Adobe executives Lori DeFurio and Mike Potter at that conference on April 20, 2005.

22. On June 1, 2005, a live, on-line three-way LiveMeeting presentation of the latest features of Rosebud was given to Lori DeFurio at her home in upstate New York by Mohan and Rosebud consultant Tim Plumer.  This presentation was essentially the same as Rosebud's YouTube video available at Rosebud's website (see www.rosebudplm.com/qtime_demo.php or www.youtube.com/watch?v=ozm0hyyC8ak).

23. On or about May 18, 2006, Mr. Mohan attended the next annual AGI/Adobe Acrobat & PDF Conference in Orlando, Florida.  At that conference, he provided a

demonstration of Rosebud's proprietary technology to Adobe employees Lori DeFurio and Ali Hanyaloglu.

24. Although Rosebud's proprietary technology was closely held, the capability of its technology was no secret. In December of 2006, an on-line trade review authored by Don Fluckinger was published in PDFZone, in which Fluckinger suggested: "Adobe should buy Rosebud."

25. On or about May 10, 2007, Mr. Mohan attended the next annual AGI/Adobe Acrobat & PDF Conference in Orlando, Florida and while there, provided another presentation of Rosebud's technology to Adobe employees Lori DeFurio and Ali Hanyaloglu.

26. In August of 2007, Adobe Engineer Pat Wibbeler ("Wibbeler") formed Adobe's Acrobat/Reader collaboration group. Wibbeler identified himself in his LinkedIn biography as the manager for "markup, collaboration … of Adobe Acrobat and Adobe Reader." Wibbeler also stated there that Adobe will be "building entirely new features and services for future release."

27. On June 2, 2008, Adobe's Collaborate Live service was introduced as a new service of Acrobat.com as supported by Acrobat/Reader 9. On information and belief, Collaborate Live enables a user of Acrobat 9 Professional to present and replicate page movements of a PDF document to other participants in a collaboration session who are using Reader 9 or greater.

28. On November 18, 2008, Rosebud's '760 Patent issued. That same day, Rosebud issued a press release stating as follows:

> Rosebud's patent application has been in process for 6 1/2 years and had to overcome prior art from WebEx, GE Healthcare, US Navy and IBM(4). We believe that our Rosebud technology is a significant break-thru and will be a preferred methodology for document collaboration in the future.

> Rosebud can take any client software application for creating and editing documents and turn it into a collaborative solution. As a result, people can work collaboratively on most client software products. Rosebud provides true real-time document collaboration by intercepting client application software events and replicating them to multiple users with the same or similar application. Rosebud offers greater security, is faster, provides better document resolution, is persistent, platform independent, and easier to use than web-conferencing tools.
>
> The first manifestation of our collaboration technology is our "Rosebud for PDF" SaaS solution that plugs-into Adobe Acrobat and enables PDF documents to be presented, reviewed and edited among multiple participants, either concurrently or independently. The Company presently offers an Early Adopter version of "Rosebud for PDF" that can be downloaded FREE from our website (www.RosebudPLM.com) and plugged into full Acrobat to immediately collaborate LIVE on the Web. A future release will support 3D PDF collaboration.

29. On February 4, 2009, Rosebud CEO Mohan sent an email to current Adobe CEO Shantanu Narayen, and three other Adobe executives, including Adobe's corporate counsel Karen Cottle. The email contained Rosebud's November 18, 2008 press release announcing the issuance of Rosebud's '760 patent.

30. On May 14, 2009, at the end of the prosecution of Adobe's '857 application, Rosebud's '760 Patent was discovered and cited by the Patent Examiner. However, even after the Examiner cited Rosebud's patent, Adobe made no disclosure to the Examiner of any of the information about Rosebud's technology that Adobe had obtained over the seven preceding years from Rosebud, nor did Adobe disclose the details of the numerous communications between Rosebud and Adobe relating to Rosebud's pre-existing technology and inventions.

31. In June of 2009, Adobe executive Erik Larsen, director of product marking and management, gave an interview to PCMag.com. An article by PCMag.com was published a week later on June 15, 2009, about the launch of Adobe's web-based productivity suite, Acrobat.com. (See www.pcmag.com/article2/0,2817,2348700,00.asp). In the article, Larson is

quoted as stating "that 5 million accounts have been created in the service, with 100,000 being added weekly." Larson also "estimated real-time collaboration" to be a two-billion-dollar opportunity for Adobe.

32. As of June 28, 2009, the following Adobe executives, employees or consultants registered for the Rosebud download from Rosebud's website as recorded in Rosebud's database: Tom Dent, Mike Potter, Mike Fitzpatrick, Brittany Rave, Noha Edell and Leonard Rosenthall. Activity by Adobe's employees on Rosebud's website was particularly high on January 5, 2007, February 24, 2009, and May 13, 2009 (the day before the Examiner issued the Notice of Allowance for Adobe's '857 application). As a requirement of downloading, each of these Adobe registrants signed Rosebud's End User License Agreement. Paragraph 3 of the Rosebud License Agreement states provides that: "You agree not to copy, modify, reverse engineer, decompile or disassemble the Software to the extent that such restriction is not prohibited by law." On information and belief, Adobe and its employees violated at least that provision of Rosebud's License Agreement.

33. Over the course of Rosebud's years of participation as an Adobe Developer Partner, Mr. Mohan and other Rosebud consultants gave many presentations and demonstrations of Rosebud's patent-pending collaboration technology to the following Adobe employees: Linda Fagan, Jennifer Cohen, Lori Kassuba, Carrie Cooper, Amy Bayerdorfer, Steve Snell, Andy Kicklighter, Russel Brown and Mike Potter; and on multiple occasions with: Lori DeFurio, Leonard Rosenthal and Ali Hanyaloglu.

34. Adobe has repeatedly touted (as its own) the benefits of collaboration technology developed, patented, and explained to Adobe by Rosebud. The examples are numerous, and include:

- On June 2, 2008, Adobe introduced Acrobat 9 and claimed that Acrobat 9 "will transform the process of creating and sharing electronic documents. Acrobat 9 delivers native support for Adobe Flash technology, the ability to unify a wide range of content in rich PDF Portfolios, and access to real-time capabilities for co-navigating a PDF document with colleagues. 'The expectations organizations and individuals have for communicating and collaborating in the workplace continues [sic] to grow significantly,' said Rob Tarkoff, senior vice president, Business Productivity Business Unit. 'The ability to break through and communicate a message in a compelling way has never been at a greater premium. Acrobat 9 is a response to this environment and is poised to fundamentally change how professionals communicate and collaborate using electronic documents.'"

- On June 25, 2008, Adobe claimed that Acrobat 9 had "expanded collaboration capabilities" and that Acrobat 9 "provides access to capabilities for collaborating live within a PDF document, enabled by working with Acrobat.com, a suite of hosted services available as public beta at www.acrobat.com. This new capability can enable users to drive a group's navigation through a PDF document in real-time, helping ensure everyone is literally, and figuratively, on the same page."

- On November 21, 2009, Adobe claimed to have enhanced Acrobat.com with "new productivity and collaboration capabilities" including by allowing users to "collaborate in real-time."

- On October 18, 2010, Adobe introduced the Adobe Acrobat X software family and claimed that the software suite "empowers professionals to innovate and create higher quality content, driving tighter collaboration and productivity across teams in today's dynamic business environments." Adobe claimed that the software suite would provide "[s]eamless, fluid content creation and collaboration" which was "an imperative to success in today's business world."

- On November 15, 2010, Adobe described Acrobat X as addressing "today's critical challenge of communicating and collaborating with widely dispersed teams of colleagues, partners and customers in a compelling way" and even acknowledged Acrobat X as "the most critical document tool we have across all our business areas."

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 8,046,699

35.   Plaintiff realleges and incorporates by reference the foregoing paragraphs.

36.   Plaintiff is the owner by assignment of United States Patent No. 8,046,699 ("the '699 Patent") entitled "Method And Software For Enabling N-Way Collaborative Work Over A

11

Network Of Computers" – including all rights to recover for past and future acts of infringement. The '699 Patent issued on October 25, 2011. A true and correct copy of the '699 Patent is attached as Exhibit A.

37. On information and belief, Defendant Adobe has been and now is manufacturing, using, selling, offering to sell and/or importing the Adobe Acrobat product, which includes the Collaborate Live feature, in the State of Delaware, in this judicial district, and elsewhere in the United States.

38. On information and belief, Defendant Adobe has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '699 Patent in the State of Delaware, in this judicial district, and elsewhere in the United States, by, among other things, manufacturing, using, selling, offering to sell and/or importing Adobe Acrobat products, including Adobe Acrobat 9, Acrobat X, future versions, and other applications, that include the Collaborate Live feature and/or other similar collaboration features, which are covered by one or more claims of the '699 Patent. Defendant Adobe is thus liable for infringement of the '699 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

39. At least as early as its receipt of this Complaint, Adobe has had knowledge of the '699 Patent and notice of the infringement.

## COUNT II
## VIOLATION OF ROSEBUD END USER LICENSE AGREEMENT

40. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

41. Rosebud offers its software on-line to registrants, who can download the software if they agree to abide by the terms of Rosebud's License Agreement.

42. As of June 28, 2009, the following Adobe executives, employees or consultants obtained the Rosebud download from Rosebud's website: Tom Dent, Mike Potter, Mike Fitzpatrick, Brittany Rave, Noha Edell and Leonard Rosenthall. Activity by Adobe's employees on Rosebud's website occurred at least on the following dates: January 5, 2007, May 13, 2008, February 16, 2009, February 24, 2009 and August 19, 2009 (five days after the Examiner issued the amendment for Adobe's '857 application).

43. As a requirement of downloading, each registrant signed Rosebud's End User License Agreement, attached hereto as Exhibit B.

44. Paragraph 3 of the Rosebud License Agreement states that: "You agree not to copy, modify, reverse engineer, decompile or disassemble the Software to the extent that such restriction is not prohibited by law."

45. On information and belief, Adobe and one or more of these registrants violated Rosebud's License Agreement by copying, modifying, reverse engineering, decompiling or disassembling Rosebud's subject Software in an unauthorized manner.

46. Rosebud suffered damages as a result of Adobe's breach of the terms of Rosebud's License Agreement, including through Adobe's acts of copying, modifying, reverse engineering, decompiling or disassembling Rosebud's subject Software in an unauthorized manner.

## COUNT III
## CONVERSION/THEFT OF IDEAS AND PATENT TITLE

47. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

48. As laid out above, Adobe has taken Rosebud's proprietary information, which was and is Rosebud's personal property, and wrongfully converted it to Adobe's own use, by both marketing a product embodying Rosebud's ideas and technology and by incorporating

13

Rosebud's proprietary information, which Adobe knew belonged to Rosebud, into Adobe's own '857 patent application on the same, and wrongfully prosecuting the '857 application to issuance as the '357 Patent, without authorization and to the exclusion of Rosebud's rights in same, thereby causing Rosebud injury. Thus, Adobe converted and merged Rosebud's property into a legally significant document.

49. By doing so, Adobe converted Rosebud's rightful ownership of the patented subject matter and to title of the '857 application and the '357 Patent.

50. As such, Adobe is justly indebted to Rosebud for conversion, including but not limited to, conversion of Rosebud's right to rightful title of the '357 Patent.

## COUNT IV
## UNJUST ENRICHMENT

51. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

52. As a result of Adobe's wrongful conversion of Rosebud's proprietary technology (see earlier discussion, incorporated herein by reference), Adobe has been enriched both by marketing a product embodying Rosebud's ideas and technology and by obtaining a patent on the same. Adobe's enrichment has been at Rosebud's expense and it is unjust in that the converted ideas and technology belong to Rosebud, not Adobe. As such, Adobe is justly indebted to Rosebud for restitution to the extent it has been unjustly enriched.

## COUNT V
## FRAUDULENT MISREPRESENTATION

53. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

54. Adobe is also justly indebted to Rosebud for fraud.

55. Adobe represented to Rosebud that it was interested in pursuing a collaboration. Those representations were material in that they were important to Rosebud when making the decision to provide Adobe with confidential information of Rosebud.

56. Adobe's representations were also false and, on information and belief, Adobe knew them to be false when made, or else Adobe made them recklessly without knowledge of their truth.

57. Adobe made these false representations with the intent that Rosebud rely upon and act on them.

58. Relying on those representations, and responding to Adobe's requests, Rosebud gave several presentations and demonstrations of its proprietary technology to Adobe.

59. Adobe's false representations caused Rosebud injury.

60. As such, Adobe is justly indebted to Rosebud for fraud.

## ALTERNATIVE COUNT VI
## CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256

61. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

62. As outlined above, Rosebud believes that Adobe's U.S. Patent No. 7,603,357 ("the '357 Patent") was fraudulently obtained and the inventors Adobe listed on the '357 Patent were listed with deceptive intent.

63. However, if Adobe is found not to have acted with deceptive intent in filing the '357 Patent and listing its own inventors, then, in the alternative, Rosebud is entitled to an Order requiring correction of the '357 to list the correct Rosebud inventors pursuant to 35 U.S.C. § 256.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

1. A judgment in favor of Plaintiff that Defendant has infringed, directly, jointly, and/or indirectly, by way of inducing and/or contributing to the infringement of the '699 Patent;

2. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '699 Patent;

3. A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the '699 Patent as provided under 35 U.S.C. § 284;

4. An award to Plaintiff for enhanced damages resulting from the knowing, deliberate, and willful nature of Defendant's prohibited conduct with notice being made as of the date of correspondence with Defendant, or at least as early as the date of the filing of this Complaint, as provided under 35 U.S.C. § 284;

5. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

6. An award to Plaintiff of actual, pecuniary, and punitive or exemplary damages, as appropriate, for conversion, fraudulent misrepresentation, violations of the user agreement, and unjust enrichment, including but not limited to lost profits, cost of replacement, assignment of title of the converted '857 patent application and the '357 Patent and any other relief available at law or in equity.

7. Any and all other relief to which Plaintiff may show itself to be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on any and all issues for which a jury trial is available.

ROSENTHAL MONHAIT & GODDESS, P.A.

_____
Jessica Zeldin (Del. Bar No. 3558)
jzeldin@rmgglaw.com
919 Market Street, Suite 1401
Wilmington, Delaware 19801
(302) 656-4433
*Attorneys for Plaintiff*

OF COUNSEL:

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.
Demetrios Anaipakos
Steven J. Mitby
1221 McKinney Street, Suite 3460
Houston, Texas 77010
(713) 655-1101
danaipakos@azalaw.com
smitby@azalaw.com

SPANGLER & FUSSELL P.C.
James A. Fussell, III
211 N. Union Street, Suite 100
Alexandria, VA 22314
(903) 753-9300
fussell@sfipfirm.com

SPANGLER & FUSSELL P.C.
Andrew W. Spangler
208 N. Green Street, Suite 300
Longview, TX 75601
(903) 753-9300
spangler@sfipfirm.com

September 17, 2012